IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

WALTER HOLLEY,
    Plaintiff,

vs.                                              Case No.:  3:19cv150/RV/EMT

WARDEN JOHN DOE, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, an inmate proceeding pro se and in forma pauperis, commenced this case by filing a civil rights complaint under 42 U.S.C. § 1983 (ECF Nos. 1, 4). Presently before the court is Plaintiff's Second Amended Complaint (ECF No. 21).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).  After careful consideration of the issues presented by Plaintiff, it is the opinion of the undersigned that all of Plaintiff's claims against all Defendants should be dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

I. BACKGROUND

Plaintiff names three Defendants, all of whom were employed at Century Correctional Institution ("CCI") at the time of the events giving rise to this action: Warden John Doe, Captain Jeremiah McCabe, and Trainee Wallace (ECF No. 21 at 1–2).

Plaintiff states that on October 27, 2018, Trainee Wallace, who was assigned to work Plaintiff's dormitory alone, allowed two gang members from a "high custody" dormitory to enter into Plaintiff's "low custody" dormitory (ECF No. 21 at 6–7). Plaintiff claims Defendant Wallace knew these inmates did not live in Plaintiff's dorm because he had not released anyone from that dorm earlier in the day (*id*. at 9). Plaintiff states the two inmates stabbed him multiple times (*id*. at 7). As a result, he was taken to an outside medical facility, and he continues to suffer from constant pain in various parts of his body (*id*. at 8).

Plaintiff states that less than one week prior to this incident, inmate Rodney Adderson was stabbed by other inmates who were in an unauthorized area (ECF No. 21 at 7). Plaintiff also states that "approximately (20) inmates were stabbed" during Plaintiff's ten-month stay at CCI (*id*. at 8), but he offers no details of the other stabbings, such as a description of any weapon involved or the nature or extent of any

injuries that might have resulted. Plaintiff alleges that each Defendant knew of these prior incidents of violence (*id*. at 7, 8, 10).

Plaintiff generally claims that CCI is understaffed, overcrowded, and subject to constant gang violence (ECF No. 21 at 6). Plaintiff asserts that CCI did not practice reasonable security measures such as properly screening inmates prior to entering dormitories or ordering regular "shakedown[s]" of inmates or their dormitories to limit weapons (*id*. at 6). Plaintiff also faults Defendants Doe and McCabe for allowing Defendant Wallace to work the dormitory alone, and for failing to supervise and train their respective subordinates (*id*. at 7, 9). Plaintiff additionally asserts that several Department of Corrections ("DOC") rules were violated prior to his attack (*id*. at 7).

Plaintiff claims each Defendant violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to protect him, and he additionally faults Defendants Doe and McCabe for failing to adequately train and supervise staff (ECF No. 21 at 11). As relief, he requests monetary damages in various amounts from each Defendant in their individual capacities, as well as an injunction to end the practice of allowing trainees to work dormitories alone (*id*. at 11).

II.     STATUTORY SCREENING STANDARD

To survive dismissal at the screening phase, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The complaint's allegations must establish "more than a sheer possibility that a defendant has acted unlawfully." Id. Mere "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," and a plaintiff cannot rely on "naked assertions devoid of further factual enhancement." Id. (internal quotation marks and alteration omitted); *see also* Franklin v. Curry, 738 F.3d 1246, 1251 (11th Cir. 2013). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 679. Finally, in civil rights cases, "[m]ore than mere conclusory notice pleading is required . . . . A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (quotation marks and alteration omitted).

III.  DISCUSSION

    Eighth Amendment Claims

"The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of the inmates." Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)) (alterations and quotations omitted).  "Having incarcerated 'persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct,' having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." Farmer, 511 U.S. at 833 (citation omitted).  Thus, it has long been recognized that "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* (quotation and alteration omitted).  However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834; *see also* Purcell v. Toombs Cnty., 400 F.3d 1313, 1321 (11th Cir. 2005) ("[A] prison custodian is not the guarantor of a prisoner's safety." (quotation omitted)).

A prison official violates the Eighth Amendment "when a substantial risk of serious harm, *of which the official is subjectively aware*, exists and the official does

not respond reasonably to the risk." Carter v. Galloway, 352 F.3d 1346, 1349 (internal quotation marks omitted) (alterations adopted) (emphasis added); *see also* Farmer, 511 U.S. at 828 ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."). To survive a motion to dismiss on a deliberate indifference failure-to-protect claim, a plaintiff must allege facts which plausibly suggest (1) a substantial risk of serious harm; (2) the defendant's deliberate indifference to that risk; and (3) a causal connection between the defendant's conduct and the Eighth Amendment violation. Brooks v. Warden, 800 F.3d 1295, 1301 (11th Cir. 2015).

"When examining the first element—a substantial risk of serious harm—the court uses an objective standard." Caldwell, 748 F.3d at 1099 (citation omitted). The alleged condition must be "so extreme that it poses an unreasonable risk of serious damage to the prisoner's health or safety." Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010). Thus, there must be a "strong likelihood" of injury, "rather than a mere possibility," before an official's failure to act can constitute deliberate indifference. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (quotations omitted). Moreover, the risk must be actual, rather than potential or speculative. *See* Carter, 352 F.3d at 1349–50. So, for example, a prisoner's exposure to the potential

for a fight does not, in and of itself, constitute substantial risk of harm. Purcell, 400 F.3d at 1323 ("In the jail setting, a risk of harm to some degree always exists by the nature of its being a jail.").

The second element—deliberate indifference in the context of a failure to prevent harm—has a subjective and an objective component. See Caldwell, 748 F.3d at 1099. The objective component is satisfied by evidence that the official disregarded the substantial risk by failing to act in an objectively reasonable way to alleviate the risk. Id. And, "[t]o satisfy the subjective component, the prisoner must allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." Richardson, 598 F.3d at 737. In this context, deliberate indifference requires : (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that amounts to more than mere negligence. Id.; see also Ray v. Foltz, 370 F.3d 1079, 1083 (11th Cir. 2004) ("Deliberate indifference is not the same thing as negligence or carelessness."). Thus, a prison official may have subjective knowledge only if he had both knowledge of specific facts from which an inference of risk of serious harm could be drawn, and he actually drew that inference. Carter, 352 F.3d at 1349. Therefore, a plaintiff's claim will fail as a matter of law in the absence of actual knowledge of the substantial risk, because to hold otherwise would

impermissibly void the subjective component of the analysis. *See* Farmer, 511 U.S. at 837–38.

Actual knowledge of the substantial risk is required for one to deliberately disregard it; constructive knowledge of the risk is insufficient to establish deliberate indifference under the Eighth Amendment.  So, where there are multiple defendants who, allegedly, have been deliberately indifferent, "[e]ach individual [d]efendant must be judged separately and on the basis of what that person knows." Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008).  The knowledge of one defendant may not be imputed to another.  The resulting harm may not be determinative; the essential timeframe under analysis is restricted to the time period before the injury has occurred, when the official had knowledge of the substantial risk of harm, but chose to act unreasonably.  *See* Purcell, 400 F.3d at 1320 (courts "[can]not allow the advantage of hindsight to determine whether conditions of confinement amounted to 'cruel and unusual' punishment"); *see also* Brooks, 800 F.3d at 1302 ("The very fact of an injury may, in some circumstances, be a factor in assessing that ex ante risk, but it cannot be sufficient on its own to prove that a substantial risk existed.").

Prison officials may escape liability on a deliberate indifference claim if they show, for example, that they did not know of the underlying facts indicating a

sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent. *See* <u>Farmer</u>, 511 U.S. at 844. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment" and does not give rise to a constitutional violation. *Id.* at 838.

With respect to causation, section 1983 "requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." <u>LaMarca v. Turner</u>, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks omitted). The constitutional deprivation must, in turn, be "a legal cause of [the plaintiff's] injuries." <u>Williams v. Bennett</u>, 689 F.2d 1370, 1381 (11th Cir. 1982).

A prisoner may advance an Eighth Amendment claim for failure to protect under two different theories. *See* <u>Estate of Owens v. GEO Group, Inc.</u>, 660 F. App'x 763, 769 (11th Cir. 2016) (unpublished but recognized as persuasive authority). Under the first theory—the particularized risk claim—the prisoner may show that he was the target of a specific threat or danger, and that the defendant was subjectively

aware of the individualized danger yet failed to act to alleviate that risk. *Id.* Thus, the plaintiff must adduce evidence that the individually named defendant had subjective knowledge of the risk of serious harm to the plaintiff. See McElligott v. Foley, 182 F.3d 1248, 1249–50, 1255 (11th Cir. 1999).

Alternatively, on the second theory—the dangerous conditions claim—the prisoner may demonstrate that the prison conditions to which he was subjected were so dangerous that they resulted in cruel and unusual punishment. *Id.* Plaintiff cannot rely simply on "occasional [or] isolated attacks by one prisoner on another" but rather must prove "confinement in a prison where violence and terror reign." Harrison v. Culliver, 746 F.3d 1288, 1299 (11th Cir. 2014) (quoting Purcell, 400 F.3d at 1320 ("We accept that an excessive risk of inmate-on-inmate violence at a jail creates a substantial risk of serious harm; occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, [but] confinement in a prison where violence and terror reign is actionable." (quotation omitted))). It is surely true that "[a] prisoner has a right, secured by the [E]ighth [A]mendment to be reasonably protected from constant threat of violence . . . by his fellow inmates." Purcell, 400 F.3d at 1320 (quotation and alterations omitted). But without showing a regular or constant threat of violence, procedures used by a prison—even if

deficient—do not amount to deliberate indifference or violate the Eighth Amendment's cruel and unusual punishment clause. Harrison, 746 F.3d at 1299–1300 (quotation omitted).

As to Defendant Trainee Wallace, Plaintiff faults him for allowing the two unidentified inmates into Plaintiff's "low custody" dorm, when they were not assigned to that dorm and were instead assigned to a "high custody" dorm. But these facts do not show that: (1) Wallace subjectively knew that by allowing these inmates to enter Plaintiff's dorm he was placing Plaintiff at risk of serious harm *and* that he disregarded that risk; or (2) that Wallace's conduct amounted to anything greater than mere negligence. *See* Goodman v. Kimbrough, 718 F.3d 1325 (11th Cir. 2013) (finding no evidence that jail officials were *subjectively aware* of a risk of harm to pretrial detainee who was severely beaten by cell mate, and that officials deliberately disregarded that risk, because officers' failure to conduct cell checks and head counts and their deactivation of emergency call buttons constituted negligence but did not justify constitutional liability under § 1983); Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (merely negligent failure to protect an inmate from attack does not justify liability under section 1983); *see also* Melton v. Abston, 841 F.3d 1207, 1223

(11th Cir. 2016) (citation omitted); Carter v. Galloway, 352 F.3d 1346, 1350 (11th Cir. 2003) (citing Brown, 894 F.2d at 1537).

Morever, Plaintiff has failed to allege that any Defendant was aware of a risk *particular to Plaintiff* at CCI. In this regard, it is generally insufficient to point to the attacking inmates' "high custody" status or their classification as gang members. *See* Carter v. Galloway, 352 F.3d 1346 (11th Cir. 2003) (finding inmate failed to establish claim for deliberate indifference based on prison officials' failure to protect inmate from attack by cell mate; although prison officials knew that cell mate was a "problem inmate" with a well-documented history of prison disobedience and had been prone to violence, and specific notice had been provided by inmate that cell mate was acting crazy and roaming his cell like a "caged animal," officials' *generalized awareness of risk did not satisfy the subjective awareness requirement*); *see also* Reid v. Polk, No. 3:14-CV-1408, 2018 WL 1426428 (M.D. Fla. Mar. 22, 2018) (Plaintiff's generalized fear of "convicted murderers" and "gang members" housed in his dormitory who could *potentially* harm him, rather than a specific and particularized threat of harm by either a specific inmate, cell mate, or group of inmates, was insufficient to state an Eighth Amendment claim).

Because Plaintiff has failed to establish an underlying failure-to-protect claim against Defendant Wallace, he has correspondingly failed to establish a constitutional claim against supervisory Defendants Doe and McCabe, as he was previously advised (ECF No. 5 at 9–11). *See* Myers v. Bowman, 713 F.3d 1319, 1328 (11th Cir. 2013) ("[A] supervisor may not be held liable under section 1983 unless the supervised official committed an underlying violation of a constitutional right.").

To the extent Plaintiff seeks to establish liability against Warden Doe or Captain McCabe under the "dangerous prison conditions" theory, his general assertions regarding the conditions and practices at CCI are likewise insufficient. Plaintiff alleges that CCI is overcrowded, understaffed, and subject to constant gang violence. He also seems to fault Defendants for what he perceives to be deficient practices at the institution such as assigning uncertified officers to supervise dormitories alone, allowing inmates into dormitories without searching them or verifying where they are housed, allowing inmates into "unauthorized" areas without proper supervision, and not conducting random searches of inmates or their dormitories. Again, Plaintiff has stated no plausible claim for relief.

It is well recognized that in any section 1983 action, the initial inquiry must focus on whether two essential elements are present:

> 1. whether the conduct complained of was committed by a person acting under color of state law; and
>
> 2. whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

Parratt v. Taylor, 451 U.S. 527, 535, 101 S. Ct. 1908, 68 L. Ed. 2d 420, 428 (1981), *overruled on other grounds*, Daniels v. Williams, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); Duke v. Cleland, 5 F.3d 1399, 1403 (11th Cir. 1993) (citing Parratt). Morever, as discussed above, section 1983 "requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca, 995 F.2d at 1538.

Plaintiff's allegations regarding "dangerous prison conditions" lack factual support, are vague and conclusory, and do not establish that any such condition was the result of a particular action taken by a particular Defendant or that any condition deprived him of a right, privilege, or immunity secured by the Constitution. Thus, these claims are insufficiently pled and subject to dismissal. Gonzalez, 325 F.3d 1235.

Although Plaintiff specifically alleges that, one week before his own attack, another inmate was stabbed while in the company of other inmates who were in an "unauthorized" area, and that "[a]t lease [sic] approximately twenty (20) inmates were

stabbed during Plaintiff's stay at Century" (ECF No. 21 at 7), these allegations still do not establish that CCI was an institution where violence and terror reigned. Plaintiff offers no details of any of the twenty other attacks (e.g., whether they involved deadly weapons, resulted in serious injuries, involved inmates of different security levels, involved inmates in unauthorized areas, involved inmates being supervised by trainees), and he admits that "high custody" inmates at CCI were assigned to different dormitories than "low custody" inmates. *See* Harrison v. Culliver, 746 F.3d 1288 (11th Cir. 2014) (occurrence of 33 incidents of inmate-on-inmate violence involving weapons in period of three and one-half years, only four of which occurred in back hallway in which inmate-on-inmate box-cutter assault of plaintiff state prisoner occurred, did not constitute a substantial risk of serious harm, as would be required for prison officials' § 1983 liability for Eighth Amendment violation).

Additionally, to the extent Plaintiff asserts that Defendants' alleged failure to follow a DOC rule or policy imposes liability, this argument is insufficient because a violation of DOC policy is not a basis for imposing liability under § 1983. *See* Hernandez v. Estelle, 788 F.2d 1154, 1158 (5th Cir. 1986) (noting that there is no

controlling constitutional principle that a prison official's failure to follow regulations is a constitutional violation).

## IV. CONCLUSION

The factual allegations of the Second Amended Complaint fail to state a plausible claim for relief against any Defendant. Therefore, Plaintiff's claims against all Defendants should be dismissed with prejudice.

Accordingly, it is respectfully **RECOMMENDED**:

1. That Plaintiff's claims against Defendants **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1);

2. That all pending motions be **DENIED as moot**.

3. That the clerk of court be directed to enter judgment accordingly and close the case.

At Pensacola, Florida, this 28th day of August 2019.

/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636.**